## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **CHAD WHEATLEY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No.:** |
| | ) | |
| **CHEROKEE COUNTY, KANSAS,** | ) | |
| **SHERIFF DAVID GROVES,** | ) | |
| **MICHELLE TIPPIE,** | ) | |
| **ADVANCED CORRECTIONAL HEALTHCARE, INC.,** | ) | |
| **JOHN DOE NURSE I,** | ) | |
| **JOHN DOE NURSE II,** | ) | |
| **JOHN DOE DOCTOR,** | ) | |
| **JOHN DOE JAILER I,** | ) | |
| **JOHN DOE JAILER II,** | ) | |
| **JOHN DOE JAILER III,** | ) | |
| | ) | |
| **Defendants** | ) | |

## COMPLAINT FOR DAMAGES

**COMES NOW** Plaintiff, by and through his attorneys, Roger Johnson, Scott Vorhees and Anna Sanderson of the law firm Johnson, Vorhees, & Martucci, and William Dirk Vandever, Thomas Porto and Mark Schloegel of the Popham Law Firm, and for his cause of action against Defendants, states and alleges as follows:

## PARTIES, JURISDICTION AND VENUE

1. Plaintiff Chad Wheatley (aka Chad Garrett) currently resides in the State of Missouri.

2. Plaintiff, at all relevant times, was housed in the Cherokee County Jail located at 915 E County Rd, Columbus, Kansas 66715.

3. Defendant Cherokee County is a political subdivision of the State of Kansas and is

1

the legal entity responsible for itself and for the Cherokee County Sheriff's Office and county jail. Defendant Cherokee County can be served at 110 W. Maple St, #31, Columbus, KS, 66725, with service on the Cherokee County Clerk, Kyle Rennie.

4.   Defendant Sheriff David Groves has a duty to operate the Cherokee County Jail and is responsible for the operation of the jail and its inmates, including plaintiff.  Sheriff Groves can be served at 915 E. Country Rd, Columbus, KS, 66725.

5.   Defendant Michell Tippie is the Cherokee County Jail Administrator and leads the jail's team of correctional professionals and oversees all aspects of the facility, specifically including inmate safety. Defendant Tippie can be served at 915 E. Country Rd, Columbus, KS, 66725.

6.   Defendant Advanced Correctional Healthcare, Inc., (hereinafter 'ACH') is a corporation contracting with Defendant Cherokee County to provide medical care and services within the Cherokee County Jail to inmates within the jail.   ACH has offices in many locations in Kansas, but its corporate offices are in the State of Illinois at 3922 W. Baring Trace, Peoria, IL 61615.  ACH can be served personally on its registered agent, The Corporation Company Inc., at 112 S.W. 7th Street, Suite C, Topeka, KS, 66603.

7.   Defendant ACH is the employer of individuals whose identities are currently unknown to Plaintiff but who provide medical services and care to inmates at the Cherokee County Jail in Cherokee County, Kansas.  Defendant ACH is vicariously liable for the actions and choices of said employees, herein identified as John Doe Nurse I, John Doe Nurse II and John Doe Doctor.

8.   Cherokee County is the employer of various individuals who serve the function of

jailers at Cherokee County Jail, and whose specific identities are unknown to Plaintiff. Said jailers were responsible to supervise the person of Plaintiff and to be aware of conditions that might create a threat to his life and health.

9      Said Jailers are herein identified as John Doe Jailer I, John Doe Jailer II and John Doe Jailer III, and each were acting under color of law in their capacity within the course and scope of employment with Defendant Cherokee County.

10.      All defendants named herein were acting under the color of law in their capacity as employees, agents or contractors working within the Cherokee County Jail.

11.  All complained of actions and omissions occurred at the Cherokee County Jail, located in Cherokee County, Kansas.

12. This action arises under the Constitution and laws of the United States, including Article III, Section 1 of the United States Constitution and is brought pursuant to 42 U.S.C. 1983 and 1988. Jurisdiction against Defendants is conferred upon this Court by 28 U.S.C. § 1331 and by the doctrine of supplemental jurisdiction under 28 U.S.C. § 1367.

13. This Court further has jurisdiction over Defendant Advanced Correctional Healthcare, Inc., under the doctrine of diversity Jurisdiction.

14. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in Cherokee County, Kansas, within this Court's geographic judicial district.

## <u>GENERAL ALLEGATIONS:</u>

15. Plaintiff Chad Wheatley was arrested for drug possession or related charges on or about June 13, 2019 and was then housed in the Cherokee County Jail.

16.  At all times material to this petition, plaintiff was an inmate of Cherokee County Jail and was in the custody of the Cherokee County Sheriff, and his office.

17. Defendants owe a custodial duty of care to inmates like plaintiff.

18. Defendants, including the Sheriff, have a duty to operate the county jail and ensure the safety of its inmates.

19. Defendant Tippie is a Captain at the Cherokee County Sheriff's department and her duty includes ensuring legitimate medical needs of inmates are addressed so that inmates like Chad Wheatley do. It have their medical condition deliberately ignored as it becomes progressively worse.

20. Defendant Sheriff Groves and Defendant Tippie have a duty to create, implement and enforce policies that include being responsive to medical needs of inmates, assessing a patient's medical condition when the inmate complains of illness and obtaining qualified medical help for medical conditions that are likely to become catastrophic or disabling if ignored.

21. Prior to his incarceration, Plaintiff was in generally good physical health.

22. On or about July 14, 2019,  Plaintiff began experiencing headaches – pain radiating into his head from his neck.

23.      On or about July 19, 2019, these headaches became debilitating, were accompanied by a loss of appetite, and a fever.   Plaintiff made a request to see a medical professional on the Jail's computerized kiosk system.

24.      Later that same day, on July 19, 2019, John Doe Jailer I came and escorted Plaintiff to an isolation cell, where Plaintiff was informed that they would monitor him by the camera in the cell.  Defendant John Doe Jailer I then took Plaintiff's vital signs, blood pressure

4

and temperature.  The temperature was over 102 degrees.

25.     Over the next several days Defendant John Doe Jailer I continued to come to the isolation room to which he had brought Plaintiff, and he continued to take his vitals.   This occurred at least on five different occasions.   Plaintiff would be given Tylenol or ibuprofen, but at no time did anyone come to the room to take a complete history, do a physical exam, assess Plaintiff's condition, order or perform any diagnostic tests or suggest any plan for Plaintiff's condition, despite the fact that Plaintiff's fever remained elevated persistently from 102 to 106 degrees, that his neck/head pain was unrelenting and that he was becoming progressively weaker.

26.     Defendant Cherokee County by and through the actions and choices of Defendant John Doe Jailer I chose to deny Plaintiff any legitimate medical workup for these problems.

27.     Defendant John Doe Jailer I either did not have adequate training to know how to respond to clear symptoms that suggest an infectious process or he chose to ignore these symptoms.

28.     Either Defendant Cherokee County had no policy or an inadequate policy of what to do when a patient had symptoms suggestive of an infectious process, or Defendant John Doe Jailer I chose to ignore the policy.

29.     On each of the occasions Defendant John Doe Jailer I took vital signs and became aware of Plaintiff's persistent and deteriorating condition, he chose to deny Plaintiff the fundamental human right of a medical assessment, either deliberately ignoring policies that existed or following defective policies.

30.     On or about July 21 or 22, 2019, Plaintiff was told that the Cherokee County Jail

5

had run out of pain medicines and could not provide him with even over the counter Tylenol or Ibuprofen.  This occurred for two days – where he received no pain relief medications.

31.     While in isolation, Plaintiff's condition continued to deteriorate and he began to have neurologic deficits. Defendants knew Plaintiff's condition not only persisted but was growing worse.

32.     On or about July 23, in part from the weakness he was now experiencing, Plaintiff fell in the shower area and hurt his ribs.  John Doe Jailer I, accompanied by John Doe Jailer II came to his cell after his fall, but even then still provided him with no basic diagnostic workup for his condition nor any medical care for it.  Even now after a fall, Defendant John Doe Jailer I and Defendant John Doe Jailer II chose to deliberately ignore these progressive symptoms and deny him the basic right of a medical assessment.

33.     At all such times as Plaintiff was in the isolation room, he was made to believe by the jailers occasionally coming to the isolation cell that he was under a surveillance camera.

34.     At all such times as Plaintiff was in the isolation area, ACH had contractual duties to oversee medical care of inmates incarcerated in the Cherokee County Jail.  ACH had registered nurses who would assess the medical care needs of the inmates, including when complaints of illnesses arose.   Defendant John Doe Nurse I and John Doe Nurse II were among those individuals.

35.     On or about July 24, 2019, Plaintiff Chad Wheatley began shouting into the observation camera that he needed a doctor.   This occurred multiple times, but no doctor or nurse ever came to see Plaintiff, nor was Plaintiff ever taken to see a doctor or any qualified health care provider.

6

36.     ACH, by and through the actions and choices of John Doe Nurse I, John Doe Nurse II and/or John Doe Doctor, deliberately chose to ignore the pleas for help and the clear symptoms demonstrating that Mr. Wheatley's condition was deteriorating.

37.     Chad Wheatley was crying out for help, but all defendants named herein cruelly chose to ignore his pleas, despite the obvious risk that he could die or be catastrophically harmed.

38.     Defendant Cherokee County and ACH, by and through the policies in place have a pattern and practice of deliberately ignoring inmate's requests for medical assessments or medical care for health issues they deem non-emergent, even when those conditions deteriorate and create the obvious potential for catastrophic harm.

39.     Plaintiff Chad Wheatley repeatedly asked for help from a doctor or nurse and the defendants deliberately denied him even a basic assessment from a qualified health care provider for his condition as it deteriorated from July 19-26.

40.     During the last days that Plaintiff was in the isolation area, John Doe Jailer III came to his isolation cell and administered Tylenol and Ibuprofen.   Plaintiff's fever and pain were persistent.

41.     During this time, Plaintiff was told by one of the Jailers that because of his persistent fever they should have not stopped the pain medications when they did and that they actually had not run out of it.

42.     Plaintiff Chad Wheatley's condition from July 19 to July 26, 2019, demonstrated obvious and clear evidence that he needed medical evaluation and medical care – so obvious and clear that a layperson would know that he was becoming increasingly ill and that his life could

be at risk.

43.     Defendants, and each of them, had actual knowledge of his medical needs, yet they consciously and deliberately chose to deny him even a basic medical assessment.

44.     Defendants, and each of them, knew that the delay in providing him a medical assessment and medical care could cause him substantial harm, even with the possibility that he could lose his life.

45.     Persistent high fevers in the 102-106 range, with debilitating pain going from the neck to the head and neurologic deficits emerging are hallmark signs of a progressive septic condition that is causing damage to the central nervous system.

46.     Plaintiff had each of these symptoms during this time in isolation, and Defendants knew he was having them and chose to deny him any medical assessment or medical care.

47.     By July 26, 2019, Plaintiff Chad Wheatley had become septic. The infectious process that had been causing the feverish condition had harbored in his cervical spine, forming an epidural abscess and causing both sensory nerve dysfunction and motor nerve weakness.  The weakness was so significant that Plaintiff had difficulty dressing or moving.

48.     Either Defendants Groves and Tippie knew that Plaintiff Chad Wheatley's medical condition had deteriorated on their watch and chose with the other defendants to ignore it; or they were made aware on or by July 26, 2019, and then chose to release Plaintiff on his own recognizance, still without providing him any medical assessment or help for his serious condition.

49.     Suddenly and without warning on July 26, 2019, Plaintiff was told he was being released on his own recognizance.

8

50.     At the time Plaintiff was released, he was in critical condition, was septic, and was at imminent risk of becoming catastrophically injured.  Instead of providing him with medical care even at this point, the defendants chose to deliberately dump him on their sidewalk.

51.     An ambulance was needed for Plaintiff at the time he was released, but the defendants only permitted him a call to his mother to come pick him up.

52.     When Plaintiff was released on July 26, 2019, he was handed papers regarding upcoming court dates and sent out the door.  He was not given clothes to wear, nor was any arrangement made to have someone there to pick him up on his release.  He was found curled up in a fetal position laying outside on the Jail sidewalk in a partial state of undress when his mother arrived to pick him up.

53.     From July 19-26, while he was in isolation, Plaintiff Chad Wheatley was not permitted to see or speak to his mother or sister, was not permitted to see or speak to a physician or nurse, was not permitted to make calls to his lawyer or to anyone outside the Jail to help him.

54.     From July 19-26, while being kept in isolation, Plaintiff was becoming progressively and dangerously sick, as the MRSA infectious process within his body was affecting his central nervous system.  At all such times, Plaintiff begged for medical care, and it was refused.  At all such times, Plaintiff made it clear that he was sick and becoming more gravely ill.  At all such times, Defendants knew or should have known that Plaintiff had medical symptoms that could permanently damage his body.

55.     Defendants, and each of them, were deliberately indifferent to Plaintiff Chad Wheatley's serious medical needs.

56.      Defendants, and each of them, intentionally denied him a medical assessment,

9

thereby delaying irreparably the diagnosis and timely treatment of an epidural abscess that was compressing his spinal nerves, ultimately leading to permanent paralysis.

57.     After being released on July 26 and found by his mother on the sidewalk, Plaintiff was taken to his mother's home.  The next morning, on July 27, 2019, he woke up paralyzed, unable to move his body below his neck.

58.     On July 27, 2019, Plaintiff was taken Freeman Hospital in Joplin, Missouri, where he was immediately worked up diagnostically and found to have an epidural abscess on his cervical spine that had been allowed to go on so long that it had caused catastrophic damage to his spinal nerves from compression and effacement of the nerves.  Emergency surgery was performed.

59.     Cultures from the spinal cord abscess came back positive for MRSA, an infection that was acquired by Plaintiff while in the Cherokee County Jail.

60.     Despite the emergency surgery performed on July 27, 2019, Plaintiff was left paralyzed from the neck down, and now almost two years later is considered a permanent quadriplegic.

61.     The permanent and catastrophic damages to Plaintiff's body would have been prevented had even basic assessment, examination, testing and medical care been provided to him during the days that past while he was in isolation with pain and fever.

62.     Pursuant to K.S.A. 12-15b(d), on July 16, 2021, Plaintiff has timely filed with the Cherokee County Clerk notice of his intent to bring claims under the Kansas Tort Claims Act (KTCA), effectively extending the time to bring such claims pursuant to Kansas law.  Claims springing from violations of State law that come within the KTCA are therefore reserved, but not

10

brought at this time in the instant action, pending exhaustion of the administrative remedy.

**COUNT I**
**Violation of 42 U.S.C. § 1983—Deliberate Indifference in Policies, Practices, Customs, Training, and Supervision in Violation of the Fourteenth Amendment**

(Against All Defendants)

Plaintiff incorporates all previously stated paragraphs and allegations as if fully stated herein.

63.     Plaintiff was a citizen of the United States of America and thus entitled to the full benefits and equal protection of the Federal Constitution and all laws and regulations enacted thereunder.

64.     Defendant Cherokee County is a person as recognized by 42 U.S.C. § 1983.

65.     Defendant Cherokee County and its employees, agents, and representatives were, -- each of the Defendants herein -- at all times relevant, acting under the color of state statute, ordinances, regulations, customs, or usage in their deprivation of Plaintiff Chad Wheatley's rights, privileges and immunities guaranteed to him by the Constitution of the United States, including the Amendments thereto, and of the laws of the State of Kansas.

66.     At the time of the incident that is subject of Plaintiff's Complaint, plaintiff had clearly established Constitutional rights, including the right to life under the Fourteenth Amendment to the United States Constitution.

67.     Defendants and Cherokee County and its employees, agents, and representatives knew, or should have known, of these rights at the time of the complained of conduct.

68.     The acts or omissions of Defendants and Cherokee County and its employees, agents, and representatives, as described herein, deprived Plaintiff of his constitutional and statutory rights, ultimately resulting in causing Plaintiff to suffer permanent paralysis from the neck down.

69.     Defendants and Cherokee County and its employees, agents, and representatives intentionally, knowingly and purposely deprived Plaintiff of his clearly established rights, privileges, and immunities as secured by the Constitution and laws of the United States in violation of 42 U.S.C. § 1983.

70.     Defendants and Cherokee County and its employees, agents, and representatives are policymakers for the Cherokee County Jail, and in that capacity, established policies, procedures, customs, and/or practices for the facility.

71.     Defendants and Cherokee County and its employees, agents, and representatives maintained policies, procedures, customs, and/or practices exhibiting deliberate indifference to the constitutional rights of citizens, and specifically Plaintiff, which were the moving forces behind and proximately caused the violations of Plaintiff's constitutional rights as set forth herein.

72.     Defendants and Cherokee County and its employees, agents, and representatives have developed and maintained long-standing, department-wide customs, policies, procedures, practices, and/or failed to properly train and/or supervise its employees, agents and representatives in a manner amounting to deliberate indifference to the constitutional rights of Plaintiff and the public. The inadequacy of training and/or supervision is so likely to result in violation of

constitutional and federal rights, such as those described herein, that the acts and omissions are indifferent to those rights.

73.     The deliberately indifferent training and supervision provided by Defendants and Cherokee County and its employees, agents, and representatives resulted from a conscious and deliberate choice to follow a course of action resulting in Plaintiff's constitutional and statutory rights being violated ultimately resulting in injury.

74.     As a direct and proximate result of Defendants and Cherokee County's interference with Plaintiff's federal constitutional and statutory rights and failure to provide adequate care, supervision, medical assistance, Plaintiff has suffered significant harms, damages and losses.

75.     Defendants and Cherokee County, by and through its agents and employees, actually knew of Plaintiff's objectively serious medical needs, but were deliberately indifferent to his needs and violated his Fourteenth Amendment rights in that Defendants and Cherokee County deprived Plaintiff Chad Wheatley of his rights, privileges and immunities guaranteed to him by:

  a.  Knowingly and deliberately failed to properly monitor Plaintiff;

  b.  Knowingly and deliberately failed to properly treat Plaintiff's medical condition;

  c.  knowingly and deliberately failed to allow Plaintiff access to appropriate medical services and care for his medical needs;

  d.  knowingly or deliberately failed to respond to Plaintiff in a timely manner; and,

  e.  Such other acts of deliberate indifference solidified through the discovery process; and

13

f.   depriving Plaintiff of his right to receive medical care while being held in the custody and control of the Sheriff of Cherokee County, Kansas, at the Cherokee County Jail and confined therein.

76.   Defendants and Cherokee County has shown deliberate indifference to or tacit authorization of the above conduct after notice to the officials of such misconduct.

77.   Plaintiff's harms and damages were caused and/or directly contributed to be caused by Defendants and Cherokee County's unconstitutional practice and customs which delayed the required medical care.

78.   As a result of the unconstitutional policies and customs of Defendants the treatment of Plaintiff was delayed, causing his harms and damages.

79.   The denial or delay of health care treatment for Plaintiff was attributable to something more than simple negligence upon the part of Defendants.

80.   Defendants' conduct as alleged herein constitutes a pattern and practice that is based on policies and protocols knowingly designed to give the minimum possible medical attention to inmates in their custody and control at the minimum possible cost, regardless of how ill the inmate is or the catastrophic consequences said policies and protocols may cause.   Here, Defendants chose to provide Plaintiff no medical care.

81.   Defendants and Cherokee County's conduct showed a complete indifference to or a conscious disregard for the safety of Plaintiff and others, thereby justifying an award of aggravating circumstances damages in such sum as will serve to punish and deter Defendants, and others, from like conduct in the future.

82.     Plaintiff is entitled to attorney' fees and costs pursuant to 42 U.S.C. § 1988.

**WHEREFORE** Plaintiff prays for judgment against all Defendants herein jointly and severally with other defendants, in the amount of fifty million dollars ($50,000,000.00) for compensatory damages for the harms and losses she has suffered, for her costs incurred herein, for attorneys' fees, for aggravating circumstances damages, and for any further relief this Court deems just and proper.

## COUNT II
### 42 U.S.C. § 1983 – Deliberate Indifference to Medical Needs in Violation of the Fourth and Fourteenth Amendments

(Against All Defendants)

Plaintiff incorporates all previously stated paragraphs and allegations as if fully stated herein.

83.     Plaintiff was a citizen of the United States and thus entitled to the full benefits and equal protection of the Federal Constitution and all laws and regulations enacted thereunder.

84.     Defendant(s) is a person as recognized 42 U.S.C. § 1983.

85.     Defendants were, at all times relevant, acting under the color of state statute, ordinances, regulations, customs, or usage in their deprivation of Plaintiff Chad Wheatley's rights, privileges and immunities guaranteed to him by the Constitution of the United States, including the Amendments thereto, and of the laws of the State of Kansas.

86.     At the time of the incident that is the subject of Plaintiff's Complaint, Plaintiff had clearly established Constitutional rights, including the right to life under the Fourteenth Amendment to the United States Constitution.

87.     Defendants knew, or should have known, of these rights at the time of the complained of conduct.

88.     The acts or omissions of Defendants, and its employees, as described herein, deprived Plaintiff of his constitutional and statutory rights, resulting in his death and causing Plaintiff damages.

89.     Defendants intentionally, knowingly and purposely or deliberately deprived Plaintiff of his clearly established rights, privileges, and immunities as secured by the Constitution and laws of the United States in violation of 42 U.S.C. § 1983.

90.     Defendant's actions, as described herein, were also malicious and/or involved reckless, callous, and deliberate indifference to Plaintiff's federally protected rights. The indifference displayed by Defendants shocks the conscience and so violated Plaintiff's Fourteenth Amendment rights.

91.     As a direct and proximate result of Defendants' interference with Plaintiff's federal constitutional and statutory rights, Plaintiff has suffered damages and losses.

92.     Defendants actually knew of Plaintiff's objectively serious medical needs or should have known, but were deliberately indifferent to his needs and violated his Fourteenth Amendment rights in that Defendants:

     a.  knowingly and deliberately failed to properly monitor Plaintiff;

     b.  knowingly and deliberately failed to properly treat Plaintiff's medical condition;

16

    c.  knowingly and deliberately failed to allow Plaintiff access to appropriate medical services and care for his medical needs;

    d.  knowingly and deliberately failed to respond to Plaintiff in a timely manner; and,

    e.  Such other acts of deliberate indifference that the evidence will show.

9.3    The denial or delay of health care treatment for Plaintiff was attributable to something more than simple negligence upon the part of Defendants.

94.    Defendants' conduct as alleged herein constitutes a pattern and practice that is based on policies and protocols knowingly designed to give the minimum possible medical attention to inmates in their custody and control at the minimum possible cost, regardless of how ill the inmate is or the catastrophic consequences said policies and protocols may cause.  Here, Defendants chose to provide Plaintiff no medical care.

95.    Defendants' conduct showed a complete indifference to or a conscious disregard for the safety of Plaintiff and others, thereby justifying an award of aggravating circumstances damages in such sum as will serve to punish and deter Defendant, and others, from like conduct in the future.

96.    Plaintiff is entitled to attorney' fees and costs pursuant to 42 U.S.C. 1988.

WHEREFORE Plaintiff prays for judgment against Defendant all Defendants herein, jointly and severally with other defendants, in the amount of fifty million dollars ($50,000,000.00) for compensatory damages for the harms and losses he has suffered, for his costs incurred herein, for attorneys' fees, for aggravating circumstances damages, and for any further relief this Court deems just and proper.

17

**COUNT III**
**42 U.S.C. § 1983 – Deliberate Indifference to Medical Needs in Violation of the
Eighth and Fourteenth Amendments**

(Against All Defendants)

Plaintiff incorporates all previously stated paragraphs and allegations as if fully stated herein.

97.     Plaintiff was a citizen of the United States and thus entitled to the full benefits and equal protection of the Federal Constitution and all laws and regulations enacted thereunder.

98.     Defendant(s) is a person as recognized 42 U.S.C. § 1983.

99.     Defendants were, at all times relevant, acting under the color of state statute, ordinances, regulations, customs, or usage in their deprivation of Plaintiff Chad Wheatley's rights, privileges and immunities guaranteed to him by the Constitution of the United States, including the Amendments thereto, and of the laws of the State of Kansas.

100.     At the time of the incident that is the subject of Plaintiff's Complaint, Plaintiff had clearly established Constitutional rights, including the right to be free from cruel and unusual punishment under the Eighth Amendment to the United States Constitution.

101.     Defendants knew, or should have known, of these rights at the time of the complained of conduct.

102.     The acts or omissions of Defendants, and its employees, as described herein, deprived Plaintiff of his constitutional and statutory rights, resulting in his death and causing Plaintiff damages.

103.     Plaintiff Chad Wheatley's medical needs from July 19-26, 2019, were sufficiently serious that it would be  so obvious that a lay person would recognize the need for the medical

18

attention and that a delay in providing the medical attention could likely result in substantial harm – to lifelong disability, permanent loss and considerable pain.

104.    Denying Chad Wheatley the medical attention that he needed during these days posed a substantial risk of serious harm to him.

105.    At all such times that the Defendants were denying medical attention or care to Chad Wheatley, he was an inmate in the Defendants' control, charged with but not convicted of drug related crimes, for which he did not deserve cruel and unusual punishment that could render him paralyzed from the neck down for the remainder of his life.

106.    Defendants intentionally, knowingly, deliberately, and purposely or negligently deprived Plaintiff of his clearly established rights, privileges, and immunities as secured by the Constitution and laws of the United States in violation of 42 U.S.C. § 1983.

107.    Defendant's actions, as described herein, were also malicious and/or involved reckless, callous, and deliberate indifference to Plaintiff's federally protected rights. The indifference displayed by Defendants shocks the conscience and so violated Plaintiff's Fourteenth Amendment rights.

108.    As a direct and proximate result of Defendants' interference with Plaintiff's federal constitutional and statutory rights, Plaintiff has suffered substantial harm, lifelong disability, permanent loss and considerable pain – all which would have been avoided had just basic medical attention and care been provided to him.

109.    Defendants actually knew of Plaintiff's objectively serious medical needs or should have known, but were deliberately indifferent to his needs and violated his Fourteenth Amendment rights in that Defendants:

    f.   knowingly and deliberately failed to properly monitor Plaintiff;

    g.   knowingly and deliberately failed to properly treat Plaintiff's medical condition;

    h.   knowingly and deliberately failed to allow Plaintiff access to appropriate medical services and care for his medical needs;

    i.   knowingly and deliberately failed to respond to Plaintiff in a timely manner; and,

    j.   Such other acts of deliberate indifference that the evidence will show.

110.   Any negligence alleged herein constitutes gross negligence – the equivalent of reckless and deliberate indifference to the life and safety of Chad Wheatley.

111.   The denial or delay of health care treatment for Plaintiff was attributable to something more than simple negligence upon the part of Defendants.

112.   Defendants' conduct showed a complete indifference to or a conscious disregard for the safety of Plaintiff and others, thereby justifying an award of aggravating circumstances damages in such sum as will serve to punish and deter Defendant, and others, from like conduct in the future.

113.   Plaintiff is entitled to attorney' fees and costs pursuant to 42 U.S.C. 1988.

WHEREFORE Plaintiff prays for judgment against all Defendants herein, jointly and severally with other defendants, in the amount of fifty million dollars ($50,000,000.00) for in compensatory damages for the harms and losses he has suffered, for his costs incurred herein, for attorneys' fees, for aggravating circumstances damages, and for any further relief this Court deems just and proper.

## COUNT IV
## Medical Malpractice

### (Against ACH, John Doe Nurse I, John Doe Nurse II, John Doe Doctor
### John Doe Jailer I, John Doe Jailer II, and John Doe Jailer III)

Plaintiff incorporates all previously stated paragraphs and allegations as if fully stated herein.

114.    Defendant ACH is a resident of the State of Illinois and Plaintiff asserts that this Court has diversity jurisdiction over it.

115.    Pursuant to the Court's exercise of supplemental or ancillary jurisdiction over all other claims so related to claims in the action within its original jurisdiction that said claims form part of the same case or controversy under Article III of the United States Constitution (28 USC section 1367), Plaintiff Chad Wheatley herein makes claims for medical malpractice against those with a duty to provide him with medical care while in the Cherokee County Jail, under the control and custody of Cherokee County and its employees, agents or contracts.

116.    During Plaintiff's care, treatment and custodial supervision, Defendant ACH owed a duty to Plaintiff individually and/or by and through their employees such as John Doe Nurse I, John Doe Nurse II, John Doe Doctor, its agents, servants and/or representatives as aforesaid, to use that degree of skill and learning ordinarily used by skillful, careful, and prudent members of the same profession in providing medical services and care and supervision.

117.    Based on information and belief, ACH had a system in place to do surveillance of patients who were in the isolation cells, such that it could assess by camera what was happening with the patient.  This system included having Jailers take vital signs of sick inmates.

118.    Based on information and belief, ACH acted through its own employees, such as

John Doe Nurse I, John Doe Nurse II, and through employees of Cherokee County to assess an inmate's condition without having direct contact with the inmate.

119. ACH, by and through its own employees and those of Cherokee County, had a duty to assure that an inmate received medical attention when a potentially life or limb threatening illness occurred within the Cherokee County Jail.

120. Defendants breached their duty owed to Plaintiff in one or more of the following respects:

    a. Failed to do a history and physical exam;

    b. Failed to listen to Plaintiff's calls for help;

    c. Failed to appropriately diagnose Plaintiff's condition;

    d. Failed to create and work through a differential diagnosis;

    e. Failed to provide informed consent as to the course taken;

    f. Failed to appropriately manage and anticipate complications;

    g. Failed to order appropriate tests;

    h. Failed to appropriately treat Plaintiff;

    i. Failed to timely alert appropriate medical doctors of Plaintiff's condition;

    j. Failed to provide the required care to treat Plaintiff's condition;

    k. Failed to monitor Plaintiff;

    l. Failed to seek appropriate consultation;

    m. Failed to transfer Plaintiff to the hospital;

    n. Failed to create, enforce and follow policies, procedures and protocols for working up and managing patients under the same or similar circumstances.

o.  Such further negligence as will be revealed through discovery and the evidence.

121.    As a direct and proximate result of the negligence and carelessness of Defendants as described above, Plaintiff became paralyzed from the neck down, suffering catastrophic harm and damages now and in the future that will affect every day of his life.

122.    As a result of his injuries, Plaintiff suffered economic and non-economic damage, including Wentling Damages.

123.    Defendants' conduct showed a complete indifference to or a conscious disregard for the safety of Plaintiff and others, thereby justifying an award of aggravating circumstances damages in such sum as will serve to punish and deter Defendant, and others, from like conduct in the future.

WHEREFORE, Plaintiff prays for judgment against Defendant **ACH and John Doe Nurse I**, **John Doe Doctor**, **John Doe Jailer I, John Doe Jailer II, and John Doe Jailer III** jointly and severally with other defendants, in the amount of fifty million dollars ($50,000,000.00) in compensatory damages,   for aggravating circumstances damages, for pre- and post-judgment interest, for costs and fees herein expended, and for such other relief as the Court deems just under the circumstances.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby requests a trial by jury on all issues.

**DESIGNATION OF TRIAL**

Pursuant to D. Kan. Rule 40.2, Plaintiff designates the Kansas District Court in Kansas City, Kansas as the place of trial.

Respectfully submitted,


  /s/ Roger Johnson
Roger Johnson, KS Bar # 18596
Scott Vorhees, KS Bar # 25140
Anna Sanderson, KS Bar # 27655
JOHNSON, VORHEES & MARTUCCI
510 W. 6th St.
Joplin  MO  64801
Telephone:  417-206-0100
Facsimile:  417-206-0110
e-mail:  roger@4stateslaw.com
*Attorneys for Plaintiffs*


William Dirk Vandever, KS Fed Crt #77931
Thomas Porto, KS Bar # 26214
Mark Schloegel, KS Bar # 26349
The Popham Law Firm
712 Broadway, Suite 100
Kansas City, MO 64105
Phone: 816-512-2617
Fax: 816:221-3999
dvandever@pophamlaw.com
tporto@pophamlaw.com
scholoegel@gmail.com


**ATTORNEY'S LIEN CLAIMED**